UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK EDWARD KITTRELL LAURAY | ) | CIVIL NO. 3:14-CV-00838 (KAD) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANNAH, *et al*. | ) | |
| Defendants. | ) | JANUARY 16, 2019 |

**MEMORANDUM OF DECISION RE:
THE DEFENDANTS' MOTION TO DISMISS (ECF NO. 43)**

Pending before this Court is the Defendants' motion to dismiss. For the reasons articulated below, the Motion to Dismiss is GRANTED.

**Factual Allegations**

The Plaintiff, Mark Edward Kittrell Lauray, ("Mr. Lauray" or the "Plaintiff") is presently incarcerated. On June 10, 2014, he initiated this 42 U.S.C. § 1983 action by way of a *pro se* complaint. The operative complaint is the Amended Complaint, which was initially filed by then-*pro se* Mr. Lauray on December 8, 2014 and re-filed by Mr. Lauray's counsel on October 13, 2016 after perfecting service of process. The Amended Complaint names the Connecticut Department of Corrections and several correctional personnel as defendants (collectively, the "Defendants").

This case arises out of Mr. Lauray's transfer from MacDougall-Walker Correctional Institution to Garner Correctional Institution ("Garner") on June 7, 2012. The day after his transfer, Mr. Lauray's counselor realized, based on his last name, that he was the ex-husband of a correctional officer at that facility ("Ms. Lauray"). The mistake was explained to Mr. Lauray, who was assured that Ms. Lauray was not working that day and that he would be transferred to another facility. At the recommendation of Captain Eason, Deputy Warden Hannah had Mr. Lauray placed in segregated housing pending his transfer to Cheshire Correctional Institution ("Cheshire") later

that day. Prior to his placement in segregated housing, Mr. Lauray was strip searched. After his arrival at Cheshire, Mr. Lauray filed multiple grievances and a sexual assault complaint in an effort to obtain redress for his treatment while at Garner.

The Plaintiff brings claims against Captain Eason, Deputy Warden Hannah, and Officer Jenkins, all of whom work at Garner (collectively, "Garner Defendants"). The Plaintiff describes his experience at Garner as both degrading and humiliating. He contends that the strip search and his placement in segregated housing resulted from and was in retaliation for a "sexual assault" complaint Ms. Lauray had filed against Captain Eason prior to Mr. Lauray's transfer to Garner.[1] Specifically, the Plaintiff alleges that he was accused of planning harm to Captain Eason as a result of Ms. Lauray's previously filed complaint. He also alleges that "the punishment [he] endured was an act of revenge by Captain Eason" due to his ex-wife's complaint. He further alleges that Deputy Warden Hannah was party to the decision to retaliate against him as a result of Ms. Lauray's complaint.

The Plaintiff also brings claims against several correctional officers, named and unnamed, who work at Cheshire or appear to have been involved in the handling of his complaints while at Cheshire (collectively, "Cheshire Defendants"). As to the Cheshire Defendants, the Plaintiff alleges that they did not take his grievances or complaints seriously when he sought redress for his placement in segregated housing and strip search at Garner.

**Procedural History**

On December 14, 2016, the Defendants moved to dismiss the Amended Complaint without prejudice because the Court had not conducted an initial review pursuant to 28 U.S.C. § 1915A. The Defendants acknowledged that the Plaintiff's counsel technically filed the Amended

---

[1] The Court has no information as to the precise nature of Ms. Lauray's allegations against Captain Eason.

Complaint, but they correctly observed that Mr. Lauray initially filed that complaint while he was still proceeding *pro se*. The Plaintiff responded that § 1915A screening was no longer required because he was represented by counsel. The Plaintiff further argued that even if § 1915A screening were required the Amended Complaint should not be dismissed because a claim for "[r]etaliation may be inferred by the chronology of events." The Plaintiff did not elaborate on the specific contours of his "retaliation" claim. However, the Plaintiff stated that the retaliatory act, or adverse action he suffered, was his placement in segregated housing and the strip search at Garner. He further identified Captain Eason as the driving force behind that adverse action. The Plaintiff did not argue the existence of any other viable non-retaliation claims in response to the first motion to dismiss.

On August 14, 2017, the Court (*Covello, J.*) issued a ruling denying the first motion to dismiss.[2] The Court agreed that §1915A screening was unnecessary because the Plaintiff was represented by counsel at the time the Amended Complaint was filed. The Court further held that even if an initial screening was required, the Court agreed with the Plaintiff that the allegations in the Amended Complaint were "sufficient to state a claim for retaliation."

**Discussion**

The Defendants have now moved to dismiss this action in its entirety for lack of subject matter jurisdiction on the grounds that the Plaintiff lacks standing to assert a First Amendment retaliation claim based on a third party's (Ms. Lauray's) protected speech.[3] Unexpectedly, and

---

[2] This matter was transferred to the undersigned on September 18, 2018.

[3] The Defendants argue that the Plaintiff has failed to allege that Ms. Lauray has a viable constitutional claim because her complaint against Captain Eason related primarily to a concern that was personal in nature, not a matter of public concern, and the Plaintiff did not allege that Ms. Lauray suffered any adverse employment action as a result of her complaint. *See Montero v. City of Yonkers, New York*, 890 F.3d 386, 394–95 (2d Cir. 2018) (setting forth the legal standard for retaliation claims brought by public employees); *Jackler v. Byrne*, 658 F.3d 225, 234–36 (2d Cir. 2011) (same). *E.g.*, *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (holding that public employee failed to state retaliation claim where sexual harassment complaints were not targeted at system-wide discrimination but instead were personal in nature and generally related to her own situation). *See also Huth v. Haslun,* 598 F.3d 70,

3

notwithstanding the allegations in the complaint that were set forth above, the Plaintiff stated at oral argument that he *is not* asserting a third party retaliation claim based on Ms. Lauray's constitutionally protected conduct. In particular, the Plaintiff clarified that he is not claiming that his placement in segregated housing, and the accompanying strip search, were in retaliation for Ms. Lauray's complaint against Captain Eason. Nevertheless, a fair reading of the Amended Complaint includes just such a claim, and the Plaintiff did argue in his opposition memorandum that a third party retaliation claim was adequately pleaded in the Amended Complaint. Accordingly, to the extent that a third party retaliation claim is asserted and was not abandoned at oral argument, the Court considers the merits of the Defendants' second motion to dismiss.

To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). To have standing to assert the constitutional claims of another, a plaintiff must demonstrate: "(1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.'" *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003) (quoting *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998)). In deciding a motion to dismiss, the Court must accept as true all material factual allegations in the complaint and construe all reasonable inferences to be drawn from those factual allegations in the plaintiff's favor. *Amidax Trading Grp.*, 671 F.3d at 145.

---

75 (2d Cir. 2010) ("Implicit in *Camacho*'s formulation [for third party standing] is the requirement that the third party—here Archer *has a constitutional claim*."). The Court need not decide this issue because the Court agrees with the Defendants that the Plaintiff lacks standing to assert a third party retaliation claim for other reasons.

Here, the Plaintiff alleges that he was strip searched and placed in segregated housing as an "act of revenge" by Captain Eason and others in retaliation for Ms. Lauray's complaint against Captain Eason. Although the Amended Complaint satisfies the first prong of *Camacho,* injury to the plaintiff, it does not satisfy either the second or third prongs. The Plaintiff does not allege in any fashion that Ms. Lauray is incapable of vindicating her own rights. Nor does he allege that he has a sufficiently close relationship with Ms. Lauray so as to make him an effective advocate for her rights. *See Hardy v. Daly*, No. 17-2906, 2018 WL 4631831, at *1 (2d Cir. Sept. 26, 2018) (holding husband lacked standing to bring constitutional claim on behalf of wife where he failed to articulate why his wife was unable to protect her own interests); *Roberts v. EBay Inc.*, No. 6:14-cv-4904 (HMH) (MGB), 2017 WL 9289378, at *7 n.5 (D.S.C. July 29, 2017) (noting plaintiff lacked third party standing to assert claims regarding PayPal account in ex-wife's name where "there is no evidence as to the relationship between the Plaintiff and his ex-wife"). To the contrary, the Plaintiff alleges that he has been divorced from Ms. Lauray for over eighteen years, that he had no idea she was working at Garner at the time of his transfer to that facility, and that he knew "absolutely nothing about" Ms. Lauray's complaint against Captain Eason until "about a week" after his transfer to Cheshire. As a result, the Plaintiff does not have standing to assert a retaliation claim predicated on Ms. Lauray's complaint against Captain Eason.

The Court next considers the Plaintiff's argument that this case should not be dismissed because he has asserted other viable claims. In his opposition to the second motion to dismiss, and at oral argument, the Plaintiff asserted that the Amended Complaint contains a retaliation claim founded on his own constitutional rights as well as other, non-retaliation constitutional claims. In response, the Defendants contend that the Amended Complaint cannot fairly be read to include a

first party retaliation claim and that any non-retaliation claims are precluded by this Court's ruling on the first motion to dismiss.

"To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). Because retaliation claims by prisoners "are easily fabricated"; *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); and "prone to abuse"; *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted); courts are careful to require non-conclusory allegations for inmates to state retaliation claims.

Here, despite being given ample opportunity to articulate the basis for his First Amendment retaliation claim, the Plaintiff has not done so. Indeed, a review of the Amended Complaint reveals that, although the Plaintiff has alleged that he was subjected to adverse action at Garner (*i.e.*, being placed in segregated housing and strip searched), he has not alleged that he himself engaged in any constitutionally protected speech or conduct that motivated this adverse action. The Plaintiff has also failed to state a retaliation claim based on the events that unfolded at Cheshire. The use of the prison grievance system can constitute a constitutionally protected activity in certain circumstances. *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). *See also Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996) ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all. . . ."). Here, the Plaintiff alleges that he filed multiple grievances and took numerous steps to redress the events at Garner. However, the Plaintiff does not allege that he was

subjected to any adverse action as a result of these efforts. He alleges that he did not receive a satisfactory response to his grievances and complaints and that the Cheshire officials did not take the grievances and complaints seriously. These allegations do not amount to adverse action for purposes of a retaliation claim. "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-cv-00941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003)). *See also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009). Further, the Plaintiff conceded at oral argument that his entire claim (however it is labeled) stems from his strip search and placement in segregated housing at Garner. It is self-evident that the Cheshire Defendants had no role in that conduct.

Finally, the Plaintiff argues that he has other viable non-retaliation claims stemming from the events at Garner. Based on the factual and procedural history of this case, and for all the reasons discussed at oral argument, the Plaintiff is foreclosed at this late date from asserting non-retaliation claims under the doctrines of abandonment and/or judicial estoppel.

"While the opponent to . . . a [dispositive] motion is free to ignore it completely, thereby risking the admission of key facts and leaving it to the court to determine the legal merits of all claims or defenses on those admitted facts, a partial opposition may imply an abandonment of some claims or defenses. Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them. . . . Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may

conclude that abandonment was intended." *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).

Similarly, a party may be judicially estopped from asserting a claim or defense where (i) "the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding"; (ii) "that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment"; and (iii) the court determines that "the particular factual circumstances of the case 'tip the balance of equities in favor'" of precluding the claim or defense. *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–267 (2d Cir. 2018) (internal quotation marks omitted).

As previously noted, the Defendants initially sought to dismiss this action for lack of § 1915A screening. Although the Plaintiff argued that § 1915A screening was unnecessary, he knew that if the Court did not accept this argument, § 1915A screening would occur. Under those circumstances, it would have been potentially fatal to his case not to identify and to discuss every possible claim asserted in the Amended Complaint. In other words, the Plaintiff's opposition memorandum to the first motion to dismiss was his opportunity to assert the full nature and scope of his claims. Therein, the Plaintiff argued only that the Amended Complaint stated a retaliation claim. He made no mention of any other constitutional claims purportedly asserted therein. The Court considered this argument and agreed that the Plaintiff asserted a plausible retaliation claim. In view of the Plaintiff's argument, the Court had no reason to assess the validity of any other constitutional claims and did not do so. Under these circumstances, the Court finds that the Plaintiff abandoned any non-retaliation based constitutional claims.

The Court further holds that it would not be equitable to permit the Plaintiff to assert different claims at this juncture than those asserted in response to the first motion to dismiss and

on which the Court relied when issuing its ruling on that motion as a means of avoiding the consequences of his prior litigation strategy. Accordingly, the Plaintiff is precluded from asserting any non-retaliation claims.[4]

For all of the foregoing reasons, the Defendants motion to dismiss is GRANTED with prejudice.[5] This case is dismissed.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of January 2019.

                                                      /s/ Kari A. Dooley
                                        KARI A. DOOLEY
                                        UNITED STATES DISTRICT JUDGE

---

[4] Were the Court to consider whether non-retaliation claims were asserted in the Amended Complaint, the outcome would be no different. With respect to his strip search, the Plaintiff has not stated a claim under the Fourth Amendment; *see Abrams v. Waters*, No. 3:17-cv-1659 (CSH), 2018 WL 691717, at *10 (D. Conn. Feb. 2, 2018); *Holloway v. Dep't of Corr.*, No. 3:11-cv-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013); or the Eighth Amendment; *see Shannon v. Venettozzi*, No. 17-2092, 2018 WL 4224321, at *2 (2d Cir. Sept. 6, 2018); *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir. 2015). With respect to his placement in segregated housing, the Plaintiff has not stated a procedural due process claim under the Fourteenth Amendment. *See Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004). Finally, the Plaintiff has failed to state a claim for negligence based on his transfer to Garner insofar as he cannot pursue a negligence claim against state officials acting within the scope of their employment; Conn. Gen. Stat. § 4-165(a); and he has not alleged that he received the requisite permission from the Claims Commissioner to sue the State for negligence; Conn. Gen. Stat. § 4-165(a); Conn. Gen. Stat. § 4-160(a) & (c).

[5] At oral argument, the Plaintiff sought the opportunity to replead in light of the fact, *inter alia,* that the Amended Complaint was drafted by a *pro se* litigant. This case has been pending for almost five years and was on the verge of trial at the time the instant motion to dismiss was filed. As was discussed at oral argument, the Plaintiff's counsel elected to file the Amended Complaint as written by Mr. Lauray after appearing in this matter, making no effort to replead the Plaintiff's claims. Accordingly, the Plaintiff's request to replead was denied.